# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ABDUL HOWARD,

    Plaintiff

v.

BONNIE POLLEY, et al.,

    Defendants

Case No.: 2:15-cv-01458-APG-VCF

**Order Granting in Part Defendant's Motion for Summary Judgment and Ordering Evidentiary Hearing**

[ECF No. 107]

    After a hearing on defendant Bonnie Polley's motion for summary judgment, I ordered the parties to submit supplemental briefs about whether Polley is entitled to qualified immunity for plaintiff Abdul Howard's claims.[1] Howard asserts two claims against Polley related to events that occurred while he was detained at the Clark County Detention Center (CCDC).[2] He first alleges that CCDC has a policy requiring Muslim inmates who wish to attend weekly Jumu'ah group-prayer services to submit a request and wait for additional security screening. He claims this violates his First Amendment free-exercise rights. He also claims that the screening policy violates his Fourteenth Amendment right to equal protection because only Muslim inmates are subject to it.

    I previously denied Polley's motion for summary judgment in part because there are questions of fact about whether the policy infringed on Howard's First and Fourteenth Amendment rights. I withheld judgment on Polley's request for qualified immunity, however, because the parties had not adequately briefed the issue of what constitutional right was at issue and whether that right was clearly established. I now grant summary judgment in Polley's favor

---

[1] ECF No. 115.

[2] Polley is the only remaining defendant in this case.

on Howard's free-exercise claim and order an evidentiary hearing to resolve the issue of qualified immunity on Howard's equal-protection claim.

## I. ANALYSIS

Government officials performing discretionary functions may be entitled to qualified immunity for claims made under 28 U.S.C. § 1983.[3] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[4]

In ruling on a qualified immunity defense, I consider whether the evidence, viewed in the light most favorable to the plaintiff, shows the defendant's conduct violated a constitutional right.[5] If so, I then determine whether the right was clearly established.[6] I may perform this two-step inquiry in any order.[7]

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[8] The plaintiff bears the burden of showing the rights at issue were clearly established at the time of the defendant's actions.[9] The plaintiff need not identify a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[10] I make this second inquiry

---

[3] *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).
[4] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[5] *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).
[6] *Id.*
[7] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).
[8] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation omitted).
[9] *Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009).
[10] *Id.*

2

"in light of the specific context of the case, not as a broad general proposition."[11]  The Supreme Court of the United States has cautioned lower courts to avoid addressing qualified immunity at a high level of generality.[12]  Courts must consider the specific facts of the case and determine whether an official would know his or her actions violated clearly established law in those particular circumstances.[13]  A defendant will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable.[14]

### A. Howard's First Amendment Free Exercise Claim

In his supplemental brief, Howard identifies the right at issue in his First Amendment claim as his "right to attend Friday Muslim group prayer service . . . ."[15]  He asserts that CCDC's policy interferes with this right because it requires Muslim inmates to submit a written request to attend Jumu'ah services, wait for an additional screening, and be subject to discipline for not attending once they are given permission.[16]

Howard defines the constitutional right at too high a level of generality.  He cites several cases to support his assertion that the right to participate in Jumu'ah services is clearly established.  The cases he cites stand for this principle but are distinguishable for one key reason: they involve complete denials of access to religious services.[17]  Here, Howard and other Muslim

---

[11] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[12] *Saucier*, 533 U.S. at 201; *see also Sheehan v. Cty. Of San Francisco*, 135 S. Ct. 1765, 1775–76 (2015); *Kisella v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018).

[13] *City of Escondido v. Emmons*, 586 U.S. ___, 139 S.Ct. 500 (2019) (per curiam) (slip op. at 5).

[14] *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003).

[15] ECF No. 116 at 2.

[16] *Id.*

[17] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 346–47 (1987) (prison policy changes resulted in Muslim inmates who worked outside during the day being unable to return to the prison building to attend services); *Alston v. DeBruyn*, 13 F.3d 1036, 1040 (7th Cir. 1994) (inmates in an administrative segregation were not provided any religious services); *Salahuddin v. Coughlin*,

3

inmates have access to services, but subject to a short delay. Howard's reference to his prior case against Polley emphasizes this distinction. That case alleged that CCDC did not provide Jumu'ah services at all, so Polley was aware of the right to congregate for Jumu'ah services. But the cases Howard cites do not place beyond debate the question whether Muslim inmates have an *immediate* right to Jumu'ah services. In fact, many of those cases cited support the proposition that some limitations on the right to attend Jumu'ah will pass constitutional muster as long as they are reasonable.[18] Howard has not shown that the right to be free from a delay in attending Jumu'ah services was clearly established. Accordingly, Polley is entitled to qualified immunity and summary judgment on Howard's free-exercise claim.

### B. Howard's Fourteenth Amendment Equal Protection Claim

Howard argues that the right at issue in his equal-protection claim is to be free of discrimination in the pursuit of his faith.[19] He asserts that this right was violated because only Muslim inmates have to submit a written request to attend group religious services, wait to be screened, and face discipline for failing to attend services. In response, Polley argues that Howard cannot show a violation of clearly established law because the cases upon which Howard relies are factually distinguishable from this case.[20]

---

993 F.2d 306, 307 (2d Cir. 1993) (newly built prison did not permit any congregate religious services); *Beck v. Lynaugh*, 842 F.2d 759, 760 (5th Cir. 1988) (inmates housed in administrative segregation unit were prohibited from attending weekly religious services); *LaReau v. MacDougall*, 473 F.2d 974, 979 (2d Cir. 1972) (inmates in any segregation unit were not allowed to visit the prison chapel where all group services were held).

[18] *See O'Lone*, 482 U.S. at 348 ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (quotation omitted); *Shakur v. Schiro*, 514 F.3d 878, 883 (9th Cir. 2008).

[19] ECF No. 116 at 6.

[20] ECF No. 117 at 12.

4

Howard has a clearly established right to "a reasonable opportunity of pursuing his [Muslim] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts."[21] "Prisons need not provide identical facilities or personnel to different faiths . . . but must make good faith accommodation of the prisoners' rights in light of practical considerations."[22] Restrictions and limitations on religious practices may be imposed if "necessitated by legitimate penological interests."[23]

Because the right at issue was clearly established, I next analyze whether the evidence shows that Polley's conduct violated this right. As discussed in my prior order on this issue, there remain questions of fact whether practical considerations and penological interests justified treating Muslim inmates differently than inmates of other faiths. If Polley's allegation is true that there are not enough Imams and Muslim inmates to hold Jumu'ah services in multiple housing modules, then the current system could be a reasonable restriction. I do not have sufficient evidence before me at this time to decide those questions.

Qualified immunity "is an immunity from suit" and not a "mere defense to liability."[24] Thus, it should be ruled on "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."[25] My decision on Polley's qualified immunity as to

---

[21] *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)) (internal quotation marks and alterations omitted).

[22] *Id.* (quoting *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987)) (internal quotation marks and alterations omitted).

[23] *Id.*

[24] *Conner v. Heiman*, 672 F.3d 1126, 1130 (9th Cir. 2012) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (internal emphasis and quotation marks omitted).

[25] *Id.* (quoting *Saucier*, 533 U.S. at 200), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)) (internal quotation marks omitted).

5

Howard's equal-protection claim could be dispositive. Thus, I will hold an evidentiary hearing to resolve the issue of qualified immunity.

## II. CONCLUSION

IT IS THEREFORE ORDERED that Polley's motion for summary judgment **[ECF No. 107] is granted in part**. Polley is entitled to qualified immunity on Howard's First Amendment free exercise claim. That claim is dismissed as to Polley.

IT IS FURTHER ORDERED that the parties shall appear for a status conference on **Wednesday, February 20, 2019 at 10:00 a.m.** to discuss scheduling an evidentiary hearing on the issue of qualified immunity. Prior to that status conference, the parties shall confer about the evidence and witnesses they intend to present at the evidentiary hearing and their and their witnesses' availability for the evidentiary hearing.

Dated: February 4, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE